PROTECTIVE FIRE & CASUALTY COMPANY, APPELLANT, V. HAROLD E. WOTEN ET AL., APPELLEES.

181 N. W. 2d 835

Filed December 11, 1970. No. 37664.

Harry L. Welch and Harold W. Kauffman of Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellant.

Thomas J. Guifoyle of Swenson & Guifoyle, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is a declaratory judgment action seeking to

sustain an excess-escape clause as applied to an uninsured motorist provision in a policy issued by plaintiff. The district court held the provision to be contrary to the requirements of our statute, and of no effect. We affirm.

Deceased was a guest passenger in a car owned and operated by one Turner, which was involved in a collision with a car owned by an uninsured motorist. Turner had uninsured motorist's coverage with the State Farm Mutual Automobile Insurance Company for the statutory minimum. His insurer paid defendants $10,000, the limit of the uninsured motorist coverage under the Turner policy. The Woten family car was insured by the plaintiff for the statutory minimum uninsured motorist coverage. This action seeks a declaration that the plaintiff is absolved from liability under the policy it issued to the Wotens because the defendants have received the statutory uninsured motorist coverage from the State Farm Mutual Automobile Insurance Company. Defendants' damages are in excess of $20,000, which would be the amount of coverage for both policies. Plaintiff's position is essentially that its policy assures payment up to the statutory minimum uninsured motorist coverage from some source, and payment by the State Farm Mutual Automobile Insurance Company met that obligation. Plaintiff argues this construction carries out the intent of the statute because defendants are in the same position as if the uninsured motorist had owned an insurance policy with the minimum coverage provided by the statute.

The following provisions of plaintiff's policy are pertinent to this issue: "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the owner-

ship, maintenance or use of such uninsured automobile; * * *.

"Other Insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this Part exceeds the sum of the applicable limits of liability of all such other insurance.

"With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and this company shall not be liable under this Part for a greater proportion of the applicable limit of liability of this Part than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"Subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by this Part, the company shall not be liable under this Part for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss."

Plaintiff relies on the "other insurance" provision set out above, involving what is commonly known as an excess-escape clause, to avoid liability. There are cases from other jurisdictions which support plaintiff's position. There are also several jurisdictions which reject that position as a violation of the intendment of the uninsured motorist law. It is not possible to reconcile the deep conflict in these cases or to distinguish them on any rational basis, although in a few of those supporting

plaintiff's position there is no uninsured motorist statute requiring uninsured motorist coverage.

Some of the cases supporting the rejection of the excess-escape clause are: Bryant v. State Farm Mut. Auto. Ins. Co., 205 Va. 897, 140 S. E. 2d 817; Sellers v. United States Fidelity & Guaranty Co. (Fla.), 185 So. 2d 689; Vernon v. Harleysville Mut. Cas. Co., 244 S. C. 152, 135 S. E. 2d 841; Travelers Indemnity Co. v. Williams, 119 Ga. App. 414, 167 S. E. 2d 174; Aldcroft v. Fidelity & Cas. Co. of New York (R. I.), 259 A. 2d 408; Meridian Mut. Ins. Co. v. Siddons (Ky. App.), 451 S. W. 2d 831; Harleysville Mut. Cas. Co. v. Blumling, 429 Pa. 389, 241 A. 2d 112.

The following extract from Sellers v. United States Fidelity & Guaranty Co., *supra*, is pertinent herein: "It appears to us that the statute expresses the statutory requirements both as to coverage to be provided by the insurer, and as to its sources of recovery of insurance protection it paid from other persons, including other insurers legally responsible for the bodily injury to insureds, to the exclusion of inconsistent language inserted in an automobile liability policy. There appears no latitude in the statute for an insurer limiting its liability through 'other insurance'; 'excess-escape' or 'pro rata' clauses, as attempted in Condition 5. If the statute is to be meaningful and controlling in respect to the nature and extent of the coverage and to the sources of recovery and subrogation of the insurer, all inconsistent clauses in the policy to the controlling statutory language such as are contained in Condition 5 must be judicially rejected."

The following from Bryant v. State Farm Mut. Auto. Ins. Co., 205 Va. 897, 140 S. E. 2d 817, is also pertinent herein: "Section 38.1-381 (b) of the Code, quoted above, commands that *no policy* of bodily injury liability insurance shall be issued or delivered unless it undertakes to pay the insured 'all sums' he is legally entitled to recover as damages from the owner or operator of an un-

insured motor vehicle within the limits of the policy. That is plain language. It means that every such policy shall so undertake. There is no limitation or qualification of this language anywhere in the statute, nothing at all to indicate that it does not mean what it says.

"But Part 4, Section Six, of the insurance policy issued by State Farm to Bryant, Jr., undertakes to limit and qualify the provision of the statute. It undertakes to pay the insured not 'all the sums which he shall be legally entitled to recover as damages,' as the statute commands, but only such sum as exceeds 'any other similar insurance available' to him; i.e., the amount by which the applicable limit of the policy 'exceeds the sum of the applicable limits of all such other insurance.' Clearly this provision places a limitation upon the requirement of the statute and conflicts with the plain terms of the statute. It is therefore illegal and of no effect."

Our uninsured motorist law was enacted for the benefit of the innocent victim of the financially irresponsible motorist, and is to be liberally construed to fully accomplish that purpose. Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N. W. 2d 133. In the light of our previous construction of facets of our law, we are most persuaded by those cases which reject the plaintiff's position and more nearly accomplish the beneficient purpose of the law.

Plaintiff argues that the Stephens case, *supra*, is authority for its position, because we there said: "The purpose of a statute or provision is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy." This has been the premise on which some of the cases supporting plaintiff's view have been predicated. In Stephens we had only one policy and were concerned with deductions which would reduce the recovery below the statutory minimum. The question present here was not involved nor discussed.

Plaintiff further argues that defendants have already received the amount they would have received if the uninsured motorist had been covered by a standard liability policy, and to permit recovery under plaintiff's policy is to provide a windfall not intended by our law. By the same token, to allow the plaintiff to reduce its liability is a windfall to it. Defendants have paid the plaintiff for coverage, and should have the benefit of it if necessary.

Plaintiff, on the authority of those cases which uphold its position, further argues that the "other insurance" limit on recovery is a part of its contract with its insured. Obviously it is. The question, however, is whether it may be properly incorporated in its present form. The limiting provisions incorporated into the contract are no part of the statutory requirement for uninsured motorist coverage. To permit such provisions other than as they may be interpreted to prevent overcompensation is to dilute the statute. It is obvious to us that it is undesirable to permit an insurance carrier to satisfy a statutory requirement by a policy provision that reduces or eliminates liability in those instances where its insured is not fully indemnified. We have no quarrel with provisions to prevent overcompensation, but where, as here, defendants' damages exceed the possible liability, to allow the insurer to escape or limit liability is to pervert the intent of the statute. Defendants paid a premium to cover their loss under the uninsured motorist provision of plaintiff's policy. The provision therein as to excess insurance is not applicable because their loss exceeds the limits of both policies. Policy provisions which conflict with requirements of the uninsured motorist statute will not be effective to reduce an insured's recovery below the amount necessary to fully indemnify him for his loss within the limits of all applicable policies.

Judgment is affirmed. Defendants' counsel is allowed $750 for his services in this court.

AFFIRMED.

NEWTON, J., dissenting.

The opinion in this case hinges on an interpretation of the statutes of Nebraska dealing with uninsured motorists and consequent insurers liability. It holds, in substance, that section 60-509.01, R. R. S. 1943, clearly evidences a legislative intention to leave unlimited the amount that may be recovered under uninsured motorist provisions despite restrictions in affected insurance policies limiting recovery.

As indicated in the opinion of Spencer, J., there is a wide divergence of opinion on this subject among the various courts. See Annotation, 28 A. L. R. 3d 551. In the present instance, where two different insurance policies, issued by different companies, are involved, it is sought to justify the result on the theory that separate premiums were paid for uninsured motorist coverage in each policy. The argument is unsound. The insured paid in each instance, not for an unlimited coverage, but for coverage subject to the "other insurance" provisions contained in the policies.

The *only* justification for permitting recovery in the present instance is that the statute requires it. I submit that it does not. Section 60-509.01, R. R. S. 1943, was adopted in 1963. It places a minimum on the amount of uninsured motorist coverage to be made available by insurers, but is silent as to a maximum. Similar statutes have resulted in the divergent opinions referred to above. This is not, however, the only Nebraska statute dealing with the subject. In 1967, sections 60-509.02 and 60-509.03, R. R. S. 1943, were adopted. The first section provides that when a tort-feasor's insurance company becomes insolvent such tort-feasor shall be deemed an uninsured motorist. The second section provides that if the injured party recovers from a second insurer under uninsured motorist provisions of the

statute and the insurance contract, such second insurer shall be subrogated to the claim of the insured against the insolvent insurer. In other words, if the policy issued by the second insurer was for the statutorily required amount of $10,000, that is all the insured can recover. He cannot also recover a portion of his claim against the insolvent company *regardless of the amount of damage he has sustained.*

The 1967 statutes are part of the uninsured motorist act. They give a clear indication of the legislative intent on the point at issue. Had it been intended to permit recovery from two or more insurers in excess of the statutorily required $10,000 sum and in disregard of "other insurance" provisions contained in the policy, section 60-509.03, R. R. S. 1943, would never have been adopted. Under the interpretation placed on our statutes in the majority opinion, an insured dealing with an insolvent insurer can recover from only one insurer, but all others can recover from two insurers. The result is illogical and definitely not a correct interpretation of legislative intent. It promotes discrimination and represents an interpretation specifically prohibited by legislative act in California and some other states.