**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**
**Plaintiff,**

**v.**

**Bonnie L. BINKER, Individually, as Administratrix of the Estate of Carl William Binker, Jr., and as Legal Representative of Christiana Binker, Michele Binker, and Georgia Binker, Defendant/Third–Party Plaintiff,**

**v.**

**The TRAVELERS INDEMNITY COMPANY, Third–Party Defendant.**

**Civ. A. No. 83–3104 SSH.**

United States District Court,
District of Columbia.

Aug. 12, 1991.

David Cox, Christine A. Nykiel, Washington, D.C., for plaintiff.

William T. Freyvogel, Arlington, Va., for defendant, third-party plaintiff.

David Durbin, Washington, D.C., for third-party defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

On July 23, 1991, the Court held what had been scheduled to be a bench trial in this action. Because the parties had stipulated to all relevant facts, and the original plaintiff, Nationwide Union Fire Insurance Company of Pittsburgh, Pa., and defendant, Bonnie L. Binker, had settled their portion of the case, counsel for third-party plaintiff, Binker, and third-party defendant, Travelers Indemnity Company, simply presented arguments on behalf of the parties as to their remaining portion of the case. For the reasons set forth below, the Court finds that Travelers is liable to Binker in the amount of $25,000.00, plus interest.

### Findings of Fact

The parties stipulated to the following relevant facts, which are set forth virtually unedited:

1. At all times material hereto, plaintiff was a Pennsylvania corporation and was a licensed insurance company under the laws of the District of Columbia, Virginia, and Maryland.

2. On or before January 1, 1979, plaintiff issued a comprehensive automobile liability insurance policy (Policy No. GLA 126 90 88) to The Evening Star Newspaper Company and Times News Holdings, Inc. ("The Washington Star"). A copy of the insurance policy is attached to the Stipulations as Exhibit 1.[1]

3. At all times material hereto, third-party plaintiff was a resident of Virginia.

4. At all times material hereto, third-party defendant was a licensed insurance company under the laws of the District of Columbia, Virginia, and Maryland.

5. On or before September 5, 1979, third-party defendant issued a comprehensive automobile liability insurance policy (Policy No. 007276130 101 1) to third-party plaintiff and her husband, Carl William Binker, Jr. A copy of this policy is attached to the Stipulations as Exhibit 5.

6. Under the specific terms and conditions of the latter policy, Mr. and Mrs. Binker were "persons insured," *entitled* to the use, benefit, and protection of the automobile liability insurance coverage provided therein.

7. Under the specific terms and conditions of this policy, third-party defendant provided "uninsured motorists insurance" for all persons insured under the policy and agreed to "pay in accordance with Section 38.1–181 [38.1–381] of the Code of Virginia and all Acts amendatory thereof or supplementary thereto, all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle."

8. Under the specific terms and conditions of this policy, and in accordance with the Virginia Uninsured Motorists Act, as set forth in Section 38.1–381 of the Code of Virginia, 1950, as amended, this policy provided uninsured motorists insurance coverage to any person insured who incurred damages in an accident with an uninsured highway vehicle, even where there was no physical contact between the insured highway vehicle and the uninsured highway vehicle.

9. Under the specific terms and conditions of this policy, third-party defendant's coverage limitation for liability arising under the uninsured motorist insurance was $25,000 per person and $50,000 per accident.

10. On September 5, 1979, the automobile liability insurance policy issued by third-party defendant was in full force and effect.

1. Plaintiff was not a party to the July 23 court proceeding. Further information regarding plaintiff's policy is set forth in the parties' written stipulations.

11. On September 5, 1979, Carl William Binker, Jr., an employee of The Washington Star, then both the husband of third-party plaintiff and the natural father of Christiana Binker, Michele Binker, and Georgia Binker, was operating a 1968 Ford delivery truck ("Star Truck") on the 14th Street Bridge while driving from Virginia into the District of Columbia.

12. On September 5, 1979, Mr. Binker was killed in an automobile accident on the 14th Street Bridge within the District of Columbia while thus driving the Star Truck.

13. This automobile accident and the resulting death of Mr. Binker was proximately caused by the sole actionable negligence of an unknown, unidentified, and "uninsured motorist" designated as "John Doe."

14. Under the specific terms and conditions of the policy, third-party defendant was notified on a prompt and timely basis of the accident and the resulting death of Mr. Binker.

15. Under the specific terms and conditions of the automobile liability insurance policy issued by third-party defendant, the said John Doe was an "uninsured motorist" and the vehicle operated by him was an "uninsured highway vehicle."

16. In accordance with the specific terms and conditions of the automobile liability insurance policy and the provisions of the Virginia Uninsured Motorists Act, on August 29, 1980, third-party plaintiff filed a complaint against the said uninsured motorist, John Doe, in the Superior Court of the District of Columbia (*Bonnie L. Binker, Administratrix v. John Doe, et al.*: Civil Action No. 12020–80), to establish the liability of the uninsured motorist for damages incurred by third-party plaintiff in her capacity as the legal representative of Mr. Binker and his family under the District of Columbia Survival Statute (Section 12–101, District of Columbia Code, 1973, as amended) and under the District of Columbia Wrongful Death Statute (Section 16–2701, District of Columbia Code, 1973, as amended). A copy of the complaint filed by third-party plaintiff is attached to the Stipulations as Exhibit 2.

17. In accordance with the specific terms and conditions of the policy and the provisions of the Virginia Uninsured Motorist Act, third-party plaintiff served a copy of the complaint upon third-party defendant as the lawful representative of the uninsured motorist, John Doe, under the policy.

18. After service of the complaint upon third-party defendant, third-party defendant entered a formal appearance on behalf of the uninsured motorist and presented pleadings, evidence, and legal argument to the Superior Court of the District of Columbia in its own name and in the name of John Doe in defense of the allegations raised in the complaint.

19. On April 9, 1982, at the conclusion of a three-day trial by jury in the Superior Court of the District of Columbia, the jury found against the uninsured motorist, John Doe, and awarded damages under the Survival Statute in the amount of $200,000 to third-party plaintiff as Administratrix of the Estate of Carl William Binker, Jr., and under the Wrongful Death Statute in the amount of $176,000 to third-party plaintiff, individually, and in the further amounts of $3,000 to Christiana Binker, $5,000 to Michele Binker, and $16,000 to Georgia Binker, together with statutory interest from April 9, 1982, and costs. A copy of the Judgment Order entered by the Superior Court in that case is attached to the Stipulations as Exhibit 3.

20. This jury verdict in favor of Mrs. Binker was affirmed by the District of Columbia Court of Appeals on February 28, 1985.

21. As of the date of last month's proceeding before this Court, the total outstanding balance due on the Superior Court judgment is $724,586.59, including the principal amount of $400,000, interest in the amount of $324,544.59 from April 9, 1982, through July 23, 1991, and costs in the amount of $42.00.

22. During the period of time from September 1979 through July 1991, third-party plaintiff and Mr. Binker's three children, collectively, have received workmen's com-

pensation benefit payments from plaintiff, in its capacity as the workmen's compensation insurance carrier for The Washington Star, in the amount of $204,426.00.

23. Under the specific terms and conditions of the policy issued by plaintiff, the amounts payable under this insurance coverage shall be reduced by "the amount of and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law."

### Conclusions of Law

Binker argues that she is entitled to recover $50,000 plus interest from Travelers, the excess insurance carrier. However, Travelers contends that because the primary carrier's coverage was not exhausted, its excess policy was not triggered and it, therefore, has no liability to third-party plaintiff. In the alternative, Travelers argues that if it is liable to Binker, the liability is limited to $25,000.

■ As Travelers correctly points out, Binker did not oppose its motion for partial summary judgment which asserted that its obligation did not exceed $25,000. Although the Court did not grant summary judgment in favor of Travelers at that time, the Court did find that "the insurance policy issued by third-party defendant to the defendant provides only excess uninsured motorist coverage with a liability limit of $25,000.00." (February 15, 1991, Order.) Under the specific terms and conditions of the Travelers policy, Travelers' coverage limitation for liability arising under the uninsured motorist insurance was $25,000 per person and $50,000 per accident. The $25,000 per person limitation is applicable if bodily injury is sustained by one person in a single accident. The $50,000 per accident limitation is applicable if bodily injury is sustained by two or more persons in a single accident. Although Mrs. Binker and her husband were both insured under the policy, her husband was the only person to sustain bodily injury in the accident, and, therefore, the policy limit is $25,000. *See Moomaw v. State Farm*

*Mutual Automobile Ins. Co.*, 379 F.Supp. 697 (S.D.W.Va.1974).

■ Travelers argues that plaintiff has been fully compensated under the limitations of the policies, and that Travelers, therefore, is not liable for the $25,000 in excess coverage. Travelers reasons that because plaintiff, the primary insurer, could have fully met its obligation to pay the entire judgment, Travelers has no further obligation to Binker. Alternatively, Travelers argues that Binker violated the Travelers policy by settling with plaintiff without Travelers' written consent. Finally, Travelers argues that Binker has already been fully compensated for her claim. Binker argues, however, that because the policy issued by plaintiff provided only for $520,160.59 in coverage (against the $724,586.59 judgment), Travelers' excess coverage is triggered, and Travelers is liable for the excess coverage.

"[T]he [Virginia] uninsured motorist law was enacted for the benefit of injured persons and 'it is to be liberally construed so that the purpose intended may be accomplished.'" *Bryant v. State Farm Mut. Auto. Ins. Co.*, 205 Va. 897, 140 S.E.2d 817, 819 (1965) (quoting *Storm v. Nationwide Mutual Ins. Co.*, 199 Va. 130, 97 S.E.2d 759, 762 (1957). The parties agree that the Travelers policy provides Binker with "excess coverage." "However, when the application of '[excess coverage]' clauses would serve to limit or defeat full satisfaction of the injured person's judgment, such clauses will not be given effect since they would prevent recovery of 'All Sums' to which the injured person is entitled under the Virginia statute as interpreted by Virginia's highest court." *Eggleston v. Townsend*, 336 F.Supp. 1212, 1218 (D.Md.1972). Binker is entitled to recover the unpaid part of the judgment within the Travelers policy limit. *Bryant*, 140 S.E.2d at 820. Therefore, the Court still gives effect to the excess coverage clause as providing "an orderly process for determining the distribution of liability [between two] insurance carriers," *State Farm Mut. Auto. Ins. Co. v. United Services Auto. Ass'n*, 211 Va. 133, 176 S.E.2d 327, 331 (1970), but,

like Binker, interprets the clause in such a way that Binker receives the maximum recovery possible on the judgment.

"The limit of the recovery of the plaintiff under any or all insurance policies carrying the uninsured motorist provision required by § 38.1–381(b) would be the amount of the insured's judgment against the uninsured motorist." *Bryant*, 140 S.E.2d at 820. The amount due on the judgment is $724,586.59. However, to determine the amount of insurance coverage ultimately available under plaintiff's policy, it is necessary to subtract from the judgment amount the $204,426.00 in workmen's compensation payments made by plaintiff to Binker and her children. Thus, the total amount available from plaintiff is $520,-160.59, considerably less than the judgment amount, and the excess coverage under the Travelers policy is triggered. Consistent with Virginia law, this interpretation does not limit or reduce Binker's recovery on the judgment to below what she is legally entitled to within the limits of the two policies. *See* Va.Code Ann. § 38.2–2206 A (1950) (formerly § 38.1–381(b)).

■ The fact that Binker settled with plaintiff without Travelers' consent does not affect the Court's decision. It is true that the settlement provision upon which Travelers relies has been upheld by the Supreme Court of Virginia. *See Virginia Farm Bureau Mut. Ins. Co. v. Gibson*, 236 Va. 433, 374 S.E.2d 58 (1988); *see also Allstate Ins. Co. v. Brown*, 736 F.Supp. 705, 710 (W.D.Va.1990) (upholding consent-to-settlement clause in excess insurer's policy). However, even if Binker had not settled and had recovered the entire $520,-160.59, Travelers would still be liable for the excess coverage, as the amount due on the judgment is $724,586.59.

■ Having concluded that Binker is entitled to judgment against Travelers in the amount of $25,000, the Court addresses the issue of interest. Travelers argues that Binker's failure to raise the interest issue prior to trial estops her from raising it now. In addition, Travelers argues that the Court's February 15, 1991, Order pre-

cludes an award of interest. However, the Virginia Supreme Court has held that "[t]he interest the law allows on judgments is not an element of 'damages' but a statutory award for delay in the payment of money due." *Nationwide Mut. Ins. Co. v. Finley*, 215 Va. 700, 214 S.E.2d 129, 131 (1975) (citing *American Auto. Ins. Co. v. Fulcher*, 201 F.2d 751 (4th Cir.1953)). In addition, "it is irrelevant that the accumulated interest may increase the total obligation to a sum greater than the limit of coverage fixed in the insurance contract." *Finley*, 214 S.E.2d at 131. Travelers is obligated to pay interest on the $25,000 from April 9, 1982, the date of the Superior Court judgment, and nothing in the Court's February 15, 1991, Order should be interpreted to the contrary.