## CIRCUIT COURT OF THE CITY OF RICHMOND

Virginia Farm Bureau Ins. Co.

v.

Travelers Indemnity Co.

August 9, 1990

Case No. LR-2202-1

By JUDGE MELVIN R. HUGHES, JR.

This matter is before the court on the parties' cross motions for summary judgment. The fundamental issue between these two automobile insurance carriers here is which of them pays underinsured coverage to an injured person pursuant to their respective policies, how much, and in what order, according to the following facts.

On May 3, 1987, Roger Hubble was a passenger in a motor vehicle operated by Linda Clare. Harold Garrison negligently collided his vehicle with Clare's, and Hubble sustained personal injuries. State Farm Mutual Insurance Company (State Farm) provided coverage to Garrison under its policy of up to $50,000 for any one injury. Plaintiff here, Virginia Farm Bureau Insurance Company (Farm Bureau) had uninsured/underinsured coverage on the Clare vehicle of up to $30,000 for any one injury. Defendant here, The Travelers Indemnity Company (Travelers) also provided uninsured/underinsured coverage to Hubble under its policy of up to $50,000 for any injury.

The parties herein and State Farm agreed with Hubble to settle Hubble's claim for a total amount of $80,000

whereby State Farm would pay its limits of $50,000. Virginia Farm Bureau and Travelers then paid $15,000 each to Hubble, and by this proceeding, each now claiming against the other $15,000, the issue on the cross motions for summary judgment is made of who owes how much and in what order.

Though amended again in 1989, bearing on a resolution of this dispute is 1988 amending language to § 38.2-2206(B), Code of Virginia of 1950, as amended. To an extent Farm Bureau relies on the 1988 version of § 38.2-2206(B) to support its position. The 1988 amendment to the statute reads in its pertinent part as follows:

> [A]ny amount available for payment shall be credited against such policies in the following order of priority:
> 1. The policy concerning a motor vehicle occupied by the injured person at the time of the accident;
> 2. The policy covering a motor vehicle not involved in the accident under which the injured person is a named insured;
> 3. The policy covering a motor vehicle now involved in the accident under which the injured person is an insured other than a named insured.

Virginia Farm Bureau takes the view that even if the 1988 version of this statute does not apply, the same result obtains and relieves it of any obligation to pay under its policy. Travelers takes the view that the pre-1988 version of § 38.2-2206(B) which did not have the part mentioned above applies and that a provision in both policies, mentioned below, controls.

Both parties agree that under any applicable version of § 38.2-2206(B), Hubble was underinsured in the amount of $30,000, the difference between State Farm's liability coverage at $50,000 and the total amount of underinsured coverage at $80,000. This is derived from the language in the statute also in the (B) subsection of § 38.2-2206 as follows:

> A motor vehicle is "underinsured" when and to the extent that the total amount of bodily

injury and property damage coverage applicable to the operation or use of the motor vehicle . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

To put the issues in further perspective, as mentioned above, both parties' policies have an "other insurance" provision. Travelers relies on it to support its position that Farm Bureau is liable for the payment under its policy. This provision reads:

With respect to bodily injury to an insured while occupying a motor vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance.

Stating that before the 1988 amendment, the "other insurance" provisions in the policies applied to *un*insured coverage regarding priorities of payment, Virginia Farm Bureau argues that with regard to *under*insured coverage, a more recent legislative coverage enactment, the priority scheme provided in the "other insurance" provisions does not apply. Virginia Farm Bureau argues that when underinsurance coverage came, a *credit* concept as opposed to *payment* came with it. Applying the credit here, Farm Bureau contends the amount of credit (State Farm's $50,000) exceeds Farm Bureau's limits ($30,000) and Farm Bureau pays nothing. Further, Farm Bureau agrees with Travelers that its policy is the primary coverage. But Farm Bureau contends its policy is primary for all purposes, payment, and credit, and thus by the credit, it had no obligation. Farm Bureau further contends that the basis of the credit is found in the 1988 amending language to § 38.2-2206(B) that the bodily injury coverage "shall be credited against" the uninsured motorist's policies in the same order of priority in which they have to pay. The amended version applies because the parties settled after the effective date of the amendment, Farm Bureau says.

Travelers, on the other hand, argues that the "other insurance" provision in place before the 1988 amendment is not supplanted by that amendment. The statute cannot retroactively change the contract language in the policies issued before the legislature enacted the statute. Citing *State Farm Mutual Automobile Insurance Company v. United Services Automobile Association*, 211 Va. 133 (1970), Travelers argues the Court construing the other insurance provision stated "the excess insurance would come into play only in the event the established liability exceeded the coverage of the primary insurance." Thus, because of the primary of Farm Bureau's coverage, its policy limits apply and Traveler's excess does not come into play and it pays nothing.

It should be noted that the amendment took effect July 1, 1988, after Hubble was injured but before the parties settled with him.

If one assumes that the pre-1988 version of the statute applies, the question is whether Farm Bureau is entitled to a "credit" as both parties agree it has the primary coverage. If one assumes the 1988 version applies, the question is still whether there is a credit because the statute seems to give Farm Bureau a credit. The Court finds, as Travelers contends, that the rights and obligations attendant to the coverage and order of payment issues are determined at the time of the injury which is before the effective date of the amendment. The Court observes that when one considers the language of the amendment -- argued by Farm Bureau to allow a credit -- the better view is that that language should apply a credit to all such policies and the priority list should then apply to the order of payment making Farm Bureau first in line for this. As previously stated, the statute seems to say otherwise. However, given the determination that the amended statute does not come into play, it is not necessary to examine the statute any further and decide these issues under it.

The questions then become whether the "other insurance" provisions in the policies give a credit and thus absolve Farm Bureau of any obligation to pay and how liability for underinsured motorist coverage is established. Other than a formula for determining the extent to which the injured party is underinsured, the unamended version of

Section 38.2-2206 does not by that provide a credit to anyone. Perhaps the statute in its amended version makes this different because of the credit-priority scheme mentioned there, but there is nothing in the unamended form applicable here for a credit or in the other insurance provisions. The Court finds the primary carrier is that of the host vehicle, Clare's, insured by Farm Bureau, and the excess carrier, the remote, uninvolved carrier, Travelers, is the excess one. The host vehicle has a more immediate connection with the underlying transaction, the accident, than the uninvolved one which by the circumstances was more removed. Accordingly, the primary carrier pays first up to its limits, without any credits or deductions, and then the excess carrier pays to the extent of any amount remaining on the underinsured motorist coverage liability.

Mr. Spahn, counsel for Travelers, is directed to provide a draft for order giving Travelers judgment for $15,000 noting Farm Bureau's exceptions.