408 S.E.2d 898 (1991)
VIRGINIA FARM BUREAU INSURANCE COMPANY
v.
The TRAVELERS INDEMNITY COMPANY.
Record No. 901647.
Supreme Court of Virginia.
September 20, 1991.
*899 Christopher C. Spencer, Richmond (McGuire, Woods, Battle & Boothe, on briefs), for appellant.
Edward H. Starr, Jr., Richmond (Gary J. Spahn, Mays & Valentine, on brief), for appellee.
Present: CARRICO, C.J., COMPTON, STEPHENSON, RUSSELL,[*] WHITING and LACY, JJ., and POFF, Senior Justice.
WHITING, Justice.
In this appeal, we construe Code § 38.2-2206(B) to decide which of two insurance carriers, both providing the same insured with uninsured motorist coverage in excess of the statutory minimum, is liable for the payment of his underinsured motorist claim.
On May 3, 1987, Roger Hubble, a passenger in a motor vehicle operated by Linda Clare, was injured severely when another vehicle operated negligently by Harold Steven Garrison collided with Clare's vehicle. Three insurance policies are involved in this case.
State Farm Mutual Automobile Insurance Company (State Farm) provided $50,000 liability coverage to Garrison for any one injury arising out of an accident. Virginia Farm Bureau Insurance Company (Farm Bureau) provided $30,000 uninsured motorist coverage to Hubble as an occupant of Clare's vehicle. The Travelers Indemnity Company (Travelers) provided uninsured motorist coverage to Hubble in the sum of $50,000 in a liability insurance policy Hubble had purchased from Travelers covering his own vehicle. Because Hubble had a total of $80,000 in uninsured motorist coverage and Garrison had liability coverage of only $50,000, Hubble's claim was underinsured to the extent of $30,000. Code § 38.2-2206(B).
In March 1989, Hubble and the three insurance companies settled his personal injury claim for the sum of $80,000. State Farm paid its policy limits of $50,000. Farm Bureau and Travelers each paid Hubble $15,000 of his $30,000 underinsured motorist claim, with the understanding that they would later litigate their respective liabilities for Hubble's underinsurance claim.
Accordingly, Farm Bureau filed this action at law against Travelers to recover its $15,000 payment, and Travelers filed a counterclaim against Farm Bureau to recover its $15,000 payment. Upon both companies' motions for summary judgment on the pleadings, the trial court found Farm Bureau, the insurer of the vehicle in which Hubble was a passenger, liable for Hubble's entire underinsured motorist claim. Farm Bureau appeals.
At the time of the accident, Farm Bureau's and Travelers' policies contained the following identical language in their respective uninsured motorist coverage provisions:[1]
[Other Insurance.] With respect to bodily injury to an insured while occupying a motor vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance.
In a priority of coverage dispute involving the same language in the uninsured motorist endorsements of three automobile liability policies, we said that
[t]he first clause of the "Other Insurance" provision is known as the "excess" coverage clause. Essentially this clause makes the insurance covering the vehicle *900 "primary" insurance and other insurance covering the insured is "excess" or "secondary" insurance. Thus, the "excess" insurance would come into play only in event the established liability exceeded the coverage of the primary insurance.
State Farm Mut. Auto. Ins. Co. v. United Services Auto. Ass'n, 211 Va. 133, 136, 176 S.E.2d 327, 330 (1970).
Both insurance companies agree that Farm Bureau, as the insurer of the vehicle in which Hubble was riding, was the primary uninsured and underinsured motorist carrier and that Travelers was the secondary carrier. In claiming entitlement to an alleged statutory credit for Garrison's liability coverage payment, Farm Bureau contends that "[t]he policy that is primary for one purpose [liability] is primary for all purposes [including entitlement to the alleged credit]." We do not agree.
The statute in effect in 1987 provided in pertinent part that:
A.... Where the insured contracts for [uninsured motorist coverage in an amount higher than the statutory minimum], the endorsement or provisions for those limits shall obligate the insurer to make payment for bodily injury ... caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured, as defined in subsection B of this section. B.
....
A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury ... coverage applicable to the operation or use of the motor vehicle ... is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.
Code § 38.2-2206 (1986 Repl.Vol).
We assume that Farm Bureau's and Travelers' policies had uninsured motorist endorsements or provisions that conformed to the statute in effect in 1987. If so, Garrison was underinsured only "to the extent that" his liability coverage ($50,000) was less than the total uninsured motorist coverages ($80,000) available to Hubble. Thus, Garrison was underinsured to the extent of $30,000, which amount was within Farm Bureau's uninsured motorist coverage limits. The 1987 statute has no provision for any credit, and is silent as to which of the two underinsured motorist carriers has primary liability for underinsured motorist coverage. Therefore, the "Other Insurance" provisions of the policies control and, as the primary underinsured motorist carrier, Farm Bureau would be liable under the 1987 statute to pay Hubble's entire underinsured motorist claim.
Farm Bureau, however, asserts that it is entitled to a credit for the amount of Garrison's liability coverage payment because Code § 38.2-2206(B) was amended in 1988 to establish a credit for the amount of the tort-feasor's available liability coverage and to give priority in that credit to the primary underinsured motorist carrier. Acts 1988 c. 578. If the 1988 Act controls, Farm Bureau would be entitled to such priority. Dairyland Ins. Co. v. Sylva, 242 Va. ___, ___, ___ S.E.2d ___, ___(1991) (this day decided) (primary underinsured motorist carrier entitled to priority in statutory credit for tort-feasor's liability coverage available for payment).
Citing Midwest Mut. Ins. Co. v. The Aetna Casualty and Sur. Co., 216 Va. 926, 929, 223 S.E.2d 901, 904 (1976), Farm Bureau claims that because neither company was legally obligated to pay Hubble's underinsured motorist claim until the settlement was made, the statute in effect on the date of settlement in 1989 would fix both companies' payment obligations. Midwest, however, is inapposite.
Although the injured insured in Midwest neither obtained a judgment against the tort-feasor, nor served process against either of his underinsured motorist carriers as required by the insurance policies and the applicable statute, one carrier settled with the insured and filed an action for contribution from the other carrier. In deciding that the defendant carrier was not liable for contribution, we said that "the *901 case turns on the time when a common obligation comes into existence between the insurers." Id. Because, at the time of settlement in Midwest, the insured had not complied with the statutory judgment and notice requirements, neither carrier was obligated to the insured under its policy. Thus, we concluded that no common obligation came into existence.
Here, however, we are not concerned with Farm Bureau's obligation or liability to its insured under its policy. Farm Bureau has agreed that it is liable to the insured, but contends that its liability should be reduced by the credit created in the 1988 amendment. Thus, the issue here is whether the statutory amendment, subsequent to the issuance of the policies and the insured's injury, alters the contractual provisions of Farm Bureau's and Travelers' insurance policies, which otherwise fixed the order for payment of an agreed liability.
There are two reasons why the 1988 statutory amendment would not affect these preexisting contractual rights. First, there is a presumption that a statute is intended to be prospective and not retrospective in operation. Gloucester Realty Corp. v. Guthrie, 182 Va. 869, 874-75, 30 S.E.2d 686, 688-89 (1944). Farm Bureau cites, and we find, nothing to indicate a retrospective legislative intent.
Second, a legislative change in the contractually agreed order of priority of liability would impair the obligation of Farm Bureau's and Travelers' insurance contracts in violation of Article 1, § 10 of the United States Constitution and Article 1, § 11 of the Constitution of Virginia. See Shoosmith v. Scott, 217 Va. 290, 292, 227 S.E.2d 729, 731 (1976), aff'd on rehearing, 217 Va. 789, 793, 232 S.E.2d 787, 789 (1977).
Because the 1988 amendments to Code § 38.2-2206(B) do not apply to this case, we conclude that the trial court correctly ordered that Farm Bureau should receive no part of the credit for State Farm's payment of Garrison's liability coverage. Accordingly, the judgment of the trial court will be affirmed.
Affirmed.
NOTES
[*] Justice Russell participated in the hearing and decision of this case prior to the effective date of his retirement on July 1, 1991.
[1] Neither insurance company filed a copy of its policy, but both agree that the provision was in both policies.